No. 15-3289

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

**HARTIG DRUG CO. INC.,**
*Plaintiff-Appellant,*

v.

**SENJU PHARMACEUTICAL CO., LTD., KYORIN
PHARMACEUTICAL CO. LTD., and ALLERGAN INC.,**
*Defendants-Appellees.*

---

On Appeal from the United States District Court
For the District of Delaware (No. 1:14-cv-00719)

---

### APPELLANT'S OPENING BRIEF

---

J. Clayton Athey
Eric J. Juray
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE 19899
Tel: (302) 888-6500
jcathey@prickett.com
ejjuray@prickett.com

Melinda R. Coolidge
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
mcoolidge@hausfeld.com

Gregory A. Frank
Marvin L. Frank
FRANK LLP
275 Madison Ave. Suite 705
New York, NY 10016
Tel: (212) 682-1853
gfrank@frankllp.com
mfrank@frankllp.com

Brent W. Landau
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
blandau@hausfeld.com

*Attorneys for Plaintiff-Appellant
Hartig Drug Company Inc.*

## CORPORATE DISCLOSURE STATEMENT

*Hartig Drug Co. Inc. v. Senju Pharmaceutical Co., et. al., No. 15-3289*

Pursuant to Fed. R. App. P. 26.1 and Third Circuit L.A.R. 26.1.1, Appellant Hartig Drug Company Inc. makes the following disclosure:

1) For non-governmental corporate parties please list all parent corporations:

   Rx Enterprises, LTD.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

   None.

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

   None.

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

   Not Applicable.

/s/ *J. Clayton Athey*                          Dated: November 16, 2015
J. Clayton Athey
*Attorneys for Plaintiff-Appellant*
*Hartig Drug Company Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................ii

JURISDICTIONAL STATEMENT.......................................................1

STATEMENT OF ISSUES..................................................................1

STATEMENT OF RELATED CASES ..................................................2

STATEMENT OF THE CASE .............................................................2

STANDARD OF REVIEW..................................................................4

SUMMARY OF ARGUMENT.............................................................5

ARGUMENT ....................................................................................6

I.     THE APPLICABLE ANTI-ASSIGNMENT CLAUSE DID NOT BAR
      AMERISOURCE FROM ASSIGNING ITS ANTITRUST CLAIM TO
      HARTIG...................................................................................6

        A.    A Direct Purchaser May Generally Assign Antitrust Claims to an
             Indirect Purchaser .................................................................7

        B.    The Plain Language of Amerisource's Distribution Services
             Agreement with Allergan Does Not Bar Assignment of Antitrust
             Claims .................................................................................10

        C.    The District Court's Invalidation of Amerisource's Assignment to
             Hartig Is Contrary to Pennsylvania Law ............................13

        D.    The District Court's Invalidation of Amerisource's Assignment to
             Hartig Is Contrary to the Great Weight of Authority .........16

II.    EVEN IF AMERISOURCE'S ASSIGNMENT VIOLATED ITS
      AGREEMENT WITH ALLERGAN, THAT VIOLATION DOES NOT
      INVALIDATE THE ASSIGNMENT OR ELIMINATE HARTIG'S
      STANDING .............................................................................21

CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
   181 F.3d 435 (3d Cir. 1999) ........................................................ 21

*Blue Shield of Va. v. McCready*,
   457 U.S. 465 (1982) .................................................................. 20

*Cont'l Cas. Co. v. Diversified Indus.*,
   Inc., 884 F.Supp. 937 (E.D. Pa. 1995) .................................... 15

*Garden State Buildings L.P. v. First Fid. Bank, N.A.*,
   702 A.2d 1315 (N.J. Super. 1997) ...................................... 23, 3

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
   995 F.2d 425 (3d Cir. 1993) ...................................................... 7

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
   424 F.3d 363 (3d Cir. 2005) ...................................................... 7

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ............................................................ 7, 8

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) ........................................... 8

*In re Ditropan XL Antitrust Litigation*,
   No. 3:06-md-01761-JSW, 2007 WL 2978329 (N.D. Cal. Oct. 11,
   2007) .......................................................................... 16, 17, 18

*In re Fine Paper Litig.*,
   632 F.2d 1081 (3d Cir. 1980) .................................................... 7

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   42 F. Supp. 3d 231 (D. Mass. 2014) ......................................... 7

*In re Phar-Mor, Inc. Sec. Litig.*,
   172 F.3d 270 (3d. Cir. 1999) .................................................... 4

*In re Relafen Antitrust Litig.*,
    360 F. Supp. 2d 166 (D. Mass. 2005) ................................................................. 8

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    No. 1:12-md-2343, 2014 WL 2002887 (E.D. Tenn. May 15, 2014) .................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 4345316 (N.D. Cal. Sept. 15, 2011) ....................................... 11, 18, 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 3475408 (N.D. Cal. Aug. 9, 2011) ... 11, 17, 18, 19

*In re Vitamins Antitrust Litigation*,
    209 F.R.D. 251 (D.D.C. 2002) .......................................................................... 20

*Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*,
    905 A.2d 462 (Pa. 2006) ................................................................................... 15

*James ex. Rel. James v. Richman*,
    465 F. Supp. 2d 395 (M.D. Pa. 2006) .............................................................. 22

*Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't*,
    No. Civ. A. 98-4116, 1999 WL 600539 (E.D. Pa. Aug. 10, 1999) .................. 13

*Lomas Mortg. U.S.A., Inc. v. W.E. O'Neil Constr. Co.*,
    812 F. Supp. 841 (N.D. Ill. 1993) .................................................................... 21

*Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*,
    25 F.3d 616 (8th Cir. 1994) .............................................................................. 15

*Martin v. Arkansas Blue Cross & Blue Shield*,
    299 F.3d 966 (8th Cir. 2002) ............................................................................ 15

*Meijer, Inc. v. Barr Pharm., Inc.*,
    572 F. Supp. 2d 38 (D.D.C. 2008) .............................................................. 19, 20

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
    246 F.R.D. 293 (D.D.C. 2007) ........................................................... 8, 10, 17, 19

*Nat'l Mem'l Servs. v. Metro. Life Ins. Co.*,
    49 A.2d 382 (Pa. 1946) ....................................................................... 13, 14, 21

*Ram Constr. Co. v. Am. States Ins. Co.*,
   749 F.2d 1049 (3d Cir. 1984) ................................................................. 4

*SLM Soft.com, Inc. v. Cross Country Bank*,
   No. Civ. A. 00C09163JRJ, 2003 WL 1769770 (Del. Super. Apr. 2,
   2003) ...................................................................................................... 22

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ................................................................................ 7

*Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*,
   Civ. A. No. 05-102, 2006 WL 1997424 (E.D. Pa. July 13, 2006) ..................... 13

*Town of New Castle v. Yonkers Contracting Co.*,
   131 F.R.D. 38 (S.D.N.Y. 1990) .............................................................. 20

*United Food and Commercial Workers Local 1776 & Participating
   Emp'rs Health and Welfare Fund v. Teikoku Pharma USA, Inc.*,
   No. 14-md-2521, 2015 WL 4397396 (N.D. Cal. July 17, 2015) ..... 12, 13, 17, 18

*Viola v. Fireman's Fund Ins. Co.*,
   965 F. Supp. 654 (E.D. Pa. 1997) ......................................................... 15

**Statutes**

15 U.S.C § 1331 ........................................................................................ 1

15 U.S.C. § 1337 ....................................................................................... 1

28 U.S.C. § 1291 ....................................................................................... 1

**Rules**

Fed. R. App. P. 32(a)(5) .......................................................................... 2

Fed. R. App. P. 32(a)(6) .......................................................................... 2

Fed. R. App. P. 32(a)(7)(B) ..................................................................... 2

Fed. R. of Civ. P. 12(b)(1) .................................................................... 1, 4

**Other Authorities**

Restatement (Second) of Contracts § 317(2)(a)-(c) (1981) .................................... 22

Restatement (Second) of Contracts § 322 (1981) ................................... 9, 10, 21, 22

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this case pursuant to 15 U.S.C. §§ 1331, 1337, because the matters at issue in this case arise under federal antitrust laws. (A-54 to A-55, ¶¶ 153-66).

The United States Court of Appeals for the Third Circuit has jurisdiction over this matter, pursuant to 28 U.S.C. § 1291, because this is an appeal from a final decision of the United States District Court for the District of Delaware, which dismissed this case under Federal Rule of Civil Procedure 12(b)(1) on August 19, 2015. (A-13). Plaintiff filed a timely notice of appeal on September 18, 2015. (A-1 to A-2).

## STATEMENT OF ISSUES

Two issues are presently before this Court:

1.    Did the District Court err in holding that because the Distribution Services Agreement between Allergan Inc. and AmerisourceBergen Drug Corporation ("Amerisource") contained certain prohibitions on assigning the agreement, it prohibited Amerisource from assigning its antitrust claim for purchases of Zymar and Zymaxid to Hartig Drug Company Inc.? (*See* A-6 to A-12; District Court Dkt. 15, 23, 25).

2.    Did the District Court err in holding that Amerisource's assignment to Hartig Drug Company Inc. was ineffective, despite binding law to the contrary? (*See* A-6 to A-12; District Court Dkt. 15, 23, 25).

## STATEMENT OF RELATED CASES

This case has not previously been before this Court, and the undersigned is not aware of any related cases pending before this or any court or agency.

## STATEMENT OF THE CASE

This is a federal antitrust case brought under sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*. Plaintiff-Appellant Hartig Drug Company Inc. ("Hartig") is a drug store chain based in Iowa and founded over 100 years ago. Hartig filed this case "in the shoes" of its pharmaceutical supplier Amerisource; Amerisource assigned its antitrust claims arising from its purchases of Zymar and Zymaxid to Hartig.

Hartig filed its class action complaint against defendants Senju Pharmaceutical Co., Ltd. ("Senju"), Kyorin Pharmaceutical Co. Ltd. ("Kyorin"), and Allergan Inc. ("Allergan") (collectively "Defendants") on June 6, 2014, alleging antitrust violations in relation to the liquid gatifloxacin ophthalmic products Zymar and Zymaxid. (A-22 to A-60). As alleged in the complaint, Defendants' anticompetitive acts and practices include: (a) filing sham patent lawsuits, including baseless appeals after those suits were thrown out; (b) fraud

upon the United States Patent & Trademark Office; and (c) product hopping to prevent substitution of generic gatifloxacin ophthalmic formulations for Defendants' more expensive branded drugs. (A-23, ¶ 3). Defendants' wrongful suppression of generic competition resulted in supracompetitive pricing of Defendants' drugs. (A-24, ¶¶ 7-8).

Hartig's supplier of Zymar and Zymaxid, Amerisource, assigned its right to sue for antitrust damages to Hartig. (A-24 to A-25, ¶ 9). Amerisource expressly assigned its right, title, and interest in and to all causes of action it may have against Defendants under the antitrust laws of the United States, or of any state, arising out of or relating to Amerisource's purchase of Zymar and Zymaxid to the extent such product was subsequently resold to Hartig during the class period. *Id.* Hartig filed this complaint on behalf of a proposed class of all direct purchasers.

A clause in the Distribution Services Agreement ("DSA," A-108 to A-109, § 14(b)) between Amerisource and Allergan restricted Amerisource from assigning its right to serve as an authorized distributor of Allergan's products. The relevant provision reads:

> This Agreement may not be assigned by either party without the prior written consent of the other party. Notwithstanding the foregoing, either party may assign its rights and obligations hereunder without the consent of the other party to a subsidiary or affiliate or to an entity which purchases all or substantially all of the assigning party's stock or assets or acquires control of the assigning party, whether by merger, consolidation, or any other means.

*Id.*

Defendants filed motions to dismiss the complaint on September 18, 2014. Briefing on the motions to dismiss concluded on November 13, 2014. Without hearing oral argument, on August 19, 2015, the District Court issued a Memorandum Opinion that dismissed Hartig's complaint. (A-3 to A-12). The District Court held that the clause barring assignment of the contract between Allergan and Amerisource had also barred the assignment of Amerisource's antitrust claim to Hartig. Accordingly, the District Court invalidated the assignment and dismissed the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (A-3 to A-12). Hartig filed a timely notice of appeal on September 18, 2015. (A-1 to A-2).

## **STANDARD OF REVIEW**

The District Court's decision to dismiss this case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is an issue of law that this Court reviews *de novo. In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270 (3d. Cir. 1999). The District Court's construction of the contract's anti-assignment clause and the proper remedy for breach of contract are also issues of law which this Court reviews *de novo. Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir. 1984) (when the court determines "the legal operation" of a contract, it is an issue of law reviewed *de novo*).

## SUMMARY OF ARGUMENT

The District Court erred in dismissing this case for lack of subject matter jurisdiction, concluding incorrectly that Hartig did not have standing to bring its claim. First, the District Court erred in holding that the anti-assignment provision in the Distribution Services Agreement between Allergan and Amerisource invalidates the assignment that Hartig received to pursue Amerisource's claims under the antitrust laws. The anti-assignment clause bars assignment of "the Agreement" and of the rights and duties under the Distribution Service Agreement itself, not assignment of causes of action for antitrust violations. Despite citing to it, the District Court's decision is at odds with the Restatement (Second) of Contracts, and with the majority of case law.

Second, the District Court erred in disregarding binding Pennsylvania law governing the interpretation of anti-assignment clauses, which holds that a general stipulation prohibiting assignment of a contract does not bar an assignment of the right to collect a payment owed under that contract. Disregarding the finding of a majority of courts that general anti-assignment clauses thus do not bar assignment of antitrust claims, the District Court erred in basing its analysis on an unreported federal District Court decision from California that has been rejected in subsequent cases – even in that District.

Finally, even if Amerisource breached its agreement with Allergan when it assigned its antitrust claim to Hartig, and it did not, the District Court erred by treating the assignment as void. The accepted remedy for breach of an anti-assignment provision is a claim for breach of contract against the assignor, not invalidation of the assignment.

Because Hartig has standing to bring this case through a valid assignment, its complaint should not have been dismissed.

## ARGUMENT

### I.   THE APPLICABLE ANTI-ASSIGNMENT CLAUSE DID NOT BAR AMERISOURCE FROM ASSIGNING ITS ANTITRUST CLAIM TO HARTIG

The District Court erred in finding that Hartig does not hold a valid assignment of Amerisource's antitrust claims related to Zymar and Zymaxid. (A-7 to A-11). The great weight of authority – including authority cited by the District Court – holds that a general non-assignment clause of a supply contract does not bar assignment of a legal right to bring antitrust claims (or any claim for damages) arising under that contract to a third-party. Similarly here, the plain language of the clause at issue in the Distribution Services Agreement does not bar the assignment of Amerisource's antitrust claims to Hartig.

## A.    A Direct Purchaser May Generally Assign Antitrust Claims to an Indirect Purchaser

It is settled law, and a point that is not disputed among the parties, that a direct purchaser may expressly assign antitrust claims to an indirect purchaser. *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993) ("There is no serious doubt that an antitrust claim can be expressly assigned.").[1] Although the United States Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) is read to have established a "general rule" that "only direct purchasers from antitrust violators may recover damages in antitrust suits,"[2] *Illinois Brick* does not impair the ability of indirect purchasers to pursue antitrust claims that are assigned by direct purchasers. *In re Fine Paper Litig.*, 632 F.2d 1081, 1090 (3d Cir. 1980) (assignments of Sherman and Clayton Act claims are valid, and even partial assignments "pose no threat to the rule of law enunciated in [*Illinois Brick*]"). Indeed, it is common for indirect purchasers to bring antitrust claims with an assignment from direct purchasers. *See, e.g., In re*

---

[1] Nor is it disputed that assignees of a claim may bring suit for collection. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 275 (2008) ("Assignees of a claim, including assignees for collection, have long been permitted to bring suit.").

[2] *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005). As the District Court noted in the Memorandum Opinion (A-6 to A-7), the policy reasons justifying the Supreme Court's imposition of this "indirect purchaser rule" included (i) duplicative liability and inefficient enforcement of antitrust laws if both direct and indirect purchasers could sue and (ii) the uncertainty of ascertaining what overcharges were passed on to indirect purchasers. *Id.* at 369-70

*Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 298-99 (D. Mass. 2014) (rejecting AstraZeneca's argument that allowing indirect purchaser retailers to proceed based on partial assignments from their wholesalers would run counter to *Illinois Brick*); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-2343, 2014 WL 2002887, at *4 (E.D. Tenn. May 15, 2014) (recognizing that indirect purchaser retailer plaintiffs "obtained the rights of national wholesalers by assignment and are thus pursuing direct purchaser claims"); *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 301 (D.D.C. 2007) ("[W]hile Meijer, SAJ, and LaFrance were in fact indirect purchasers, they sue as assignees of, and thus stand in the shoes of, direct purchaser drug wholesalers."); *In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 187 (D. Mass. 2005) (indirect purchaser drugstore plaintiffs may bring claims as direct purchasers with an assignment from national wholesalers); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 304-06 (E.D. Mich. 2001) (indirect purchaser pharmacy assignee of a direct purchaser was an adequate class representative in an action alleging that the defendants agreed to delay the entry of lower-priced generic drugs).

In a footnote of the Memorandum Opinion (A-11 at n.4), the District Court appears to have concluded that *Illinois Brick* and the Restatement (Second) of Contracts somehow bar Hartig's claim as an assignee, irrespective of any specific anti-assignment clause in the DSA referring to antitrust claims. The District Court

referenced language in Restatement of Contracts (Second) § 322 (1), which provides that "[u]nless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." Restatement (Second) of Contracts § 322 (1981). Without analysis, the District Court held that "circumstances," including Hartig's status as an indirect purchaser and the existence of the written agreement between Amerisource and Allergan, "indicate that the right to bring an antitrust action cannot be assigned from a direct to an indirect purchaser." (A-11 at n. 4).

This holding is erroneous. The District Court's opinion confused the Restatement's admonition that an anti-assignment clause would bar only the assignment of duties and conditions "unless the circumstances indicate the contrary," with an idea that "circumstances" could prevent contracting parties from effecting assignments to certain types of people or entities, without regard to whether the terms of anti-assignment clause in question address such an assignment. Restatement (Second) of Contracts § 322 (1981). Under this novel and incorrect analysis, Hartig's status as an indirect purchaser, in and of itself, is sufficient to justify a broad reading of the DSA to negate the plain language of the assignment. In addition to lacking support in the DSA's anti-assignment language, as explained above, the rationale runs contrary to well-established law supporting

the right of indirect purchasers like Hartig to bring claims "in the shoes" of direct purchasers like Amerisource where, as here, there was an express assignment of the right to pursue claims for antitrust violations. *See, e.g., Meijer,* 246 F.R.D. at 301 ("[W]hile Meijer, SAJ, and LaFrance were in fact indirect purchasers, they sue as assignees of, and thus stand in the shoes of, direct purchaser drug wholesalers.").

### B. The Plain Language of Amerisource's Distribution Services Agreement with Allergan Does Not Bar Assignment of Antitrust Claims

The plain language of the DSA between Amerisource and Allergan does not bar assignment of the right to pursue antitrust claims. The relevant provision states:

> This Agreement may not be assigned by either party without the prior consent of the other party. Notwithstanding the foregoing, either party may assign its rights and obligations hereunder without the consent of the other party to a subsidiary or affiliate or to an entity which purchases all or substantially all of the assigning party's stock or assets or acquires control of the assigning party, whether by merger, consolidation, or other means.

(A-108 to A-109, § 14(b)).

The plain meaning of this provision is that neither party may assign the DSA as a whole to another party, without consent. *See* Restatement (Second) of Contracts § 322 (1981) ("Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition.").

Amerisource has not assigned the *agreement* to Hartig. Nor has it assigned its duties (such as the maintenance of sufficient inventory of Allergan's products to satisfy customer demand, A-103, § 3(a)) or its rights under the DSA (like the right to provide distribution services of Allergan's products, A-100, § 1(a)). Amerisource's antitrust claims are not a contractual right or duty endowed upon it by its contract with Allergan:

> [T]he anti-assignment clauses are limited to each party's rights and obligations under the contracts. . . . [L]itigation over antitrust claims cannot be seen as a "right or duty" contemplated by the contract. The State has not brought the assigned claims based on any substantive right or duty found in the contract itself. . . . Since neither party has shown . . . that the parties intended the anti-assignment provisions to cover territory beyond the rights and obligations set forth in the sales contract, the anti-assignment clauses cannot be a basis for dismissing any of the State's assigned claims.

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 3475408, at *4 (N.D. Cal. Aug. 9, 2011); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345316, at *3 (N.D. Cal. Sept. 15, 2011) (denying a similar motion to dismiss based on a provision that "no right, interest, privilege, or obligation of this Agreement shall be assigned").

The conclusion from *Flat Panel* logically follows here. Hartig is not at all interested in becoming a pharmaceutical wholesaler or performing distribution services for Allergan. The purpose of the anti-assignment provision is not to shield Allergan and its co-conspirators from lawsuits by Amerisource's customers, but

rather to prevent Amerisource from delegating its duties under its agreement with Allergan to third parties. Nothing in the DSA purports to determine who must bring an antitrust claim.

The District Court correctly recognized that the DSA between Amerisource and Allergan did not mention antitrust law or assignment of legal claims. (A-8). But the court erred in concluding that because the DSA required Allergan to comply "with federal … laws governing the purchase, handling, sale or distribution of Products" purchased under this Agreement, and antitrust claims are made under federal law, the assignment was invalid. (A-11); *see United Food and Commercial Workers Local 1776 & Participating Emp'rs Health and Welfare Fund v. Teikoku Pharma USA, Inc.*, No. 14-md-2521, 2015 WL 4397396, at *6 (N.D. Cal. July 17, 2015) (declining to invalidate assignment of antitrust claim because "[t]he existence of a boilerplate duty [in distribution services agreement] to abide by 'applicable law' does not manifest the requisite intent to expand the scope of the non-assignment clauses beyond their ordinary language."). The District Court also erred in concluding that because antitrust claims are based on prices paid, and the DSA governs pricing, the assignment must be invalid. (A-11) ("The court also finds that reading the DSA as prohibiting the right to bring a cause of action in the antitrust context is consistent with the DSA as a whole, as well as the circumstances surrounding the execution of the document. In particular, Hartig's

12

antitrust claim is founded on pricing and purchases of Zymar and Zymaxid made pursuant to the DSA.")). This reasoning "expand[s] the scope of the non-assignment clause[] beyond [its] ordinary language," and is unsupported by relevant authorities. *United Food,* 2015 WL 4397396, at *6.

### C.    The District Court's Invalidation of Amerisource's Assignment to Hartig Is Contrary to Pennsylvania Law

Although the District Court acknowledged that Pennsylvania law governs the DSA between Allergan and Amerisource,[3] it ignored settled Pennsylvania law in reaching its decision. In Pennsylvania, a general stipulation prohibiting assignment of a contract does not bar an assignment of the right to collect a payment owed.[4] *See Nat'l Mem'l Servs. v. Metro. Life Ins. Co.,* 49 A.2d 382, 383

---

[3] The DSA between Allergan and Amerisource specified that Pennsylvania law shall govern its interpretation. (A-109, §14(c); A-8).

[4] While not interpreting or relying on them, the District Court noted that Allergan had cited two unreported cases from the Eastern District of Pennsylvania "in the context of ERISA litigation." (A-9). Those cases, cited for the first time in Allergan's Reply Brief in Support of Its Motion to Dismiss "Allergan's Reply", District Court Dkt. 25 at 3, 5), evaluated whether an assignee could be considered a "beneficiary" under the language of the ERISA statute, and contemplated the interplay between ERISA and anti-assignment clauses in employee benefit plans. *Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't,* No. Civ. A. 98-4116, 1999 WL 600539, at *3 (E.D. Pa. Aug. 10, 1999); *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.,* Civ. A. No. 05-102, 2006 WL 1997424, at *10 n.8 (E.D. Pa. July 13, 2006). These unreported District Court cases did not purport to interpret Pennsylvania law – they interpreted contractual language under ERISA, and thus have no bearing on the contractual provisions at issue here. *See Lehigh Valley Hosp.,* 1999 WL 600539, at *3 (interpreting anti-assignment provision in light of ERISA); *Temple Univ. Hosp., Inc.* 2006 WL 1997424, at *4 (finding that ERISA preempts state contract law).

(Pa. 1946). In this seminal case, the Pennsylvania Supreme Court reviewed a provision prohibiting assignment in a subscriber's insurance contract. *Id.* at 382-83. There, the beneficiaries of a life insurance policy had assigned their right to receive proceeds from the policy to a third party. *Id.* The insurer refused to pay the assignee, claiming the assignment was invalid due to a clause in the contract prohibiting assignment of "the Policy." *Id.* The court held that a general anti-assignment provision of "the Policy" did not prohibit assignment of payments due under the agreement:

> We can understand why an insurer would limit the right of the insured to assign his interests in a policy as otherwise some improvident or undesirable assignee might allow the policy to lapse for the nonpayment of premiums. But there seems to be no sound reason for the insurance company to forbid or limit an assignment by a beneficiary of the amount due him or her after the death of the insured. If the company had intended to thus restrict assignments, the language is not as clear and unambiguous as it should be. That purpose could have been readily expressed in plain and specific language.

*Id.* at 382-83. Just as in *National Memorial*, Allergan is free to decide who it does business with, but there is "no sound reason" for Allergan to forbid Amerisource from assigning an amount due to it as a result of Allergan's violation of the antitrust laws.[5]

---

[5] Defendants' argument that *National Memorial* should not apply because antitrust plaintiffs must prove their claims – unlike insurance beneficiaries – has no credence. Just as an insurance beneficiary seeks payment after a loss occurs, an antitrust plaintiff likewise seeks damages after a loss (caused by a defendant's

In the years since *National Memorial*, courts have made clear that under Pennsylvania law, a general anti-assignment provision such as Amerisource's agreement with Allergan does not prevent assignment of the right to payments owed. *See Viola v. Fireman's Fund Ins. Co.*, 965 F. Supp. 654, 658 (E.D. Pa. 1997) ("Under Pennsylvania law, an insurer may not limit an insured's ability to assign his or her rights under a policy after the occurrence of the event which gives rise to the insurer's liability."); *Cont'l Cas. Co. v. Diversified Indus.*, Inc., 884 F.Supp. 937, 948 (E.D. Pa. 1995) ("Because the assignment did not increase the amount of risk which the CNA Companies will face, but merely changed the name of the party to whom any payment may be made, it passes muster under *National Memorial*"); *see also Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994) (where a health benefits plan prohibited assignment of "rights and benefits" under the plan, the anti-assignment provision "does not prohibit assignment of causes of action arising after the denial of benefits"), *abrogated on other grounds*, *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002); *see also Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 470 (Pa. 2006) (when the intent of a non-transfer clause is unclear, "it should be assumed for the sake of preliminary

---

anticompetitive conduct) occurs. *See* Allergan's Reply (District Court Dkt. 25 at 9).

objections that only a transfer of the entire policy to a new owner was precluded," and demurrer is inappropriate). Properly viewed through the lens of Pennsylvania law, the anti-assignment provision in the DSA does not bar Hartig from pursuing an antitrust claim against Allergan as an assignee of Amerisource.

### D. The District Court's Invalidation of Amerisource's Assignment to Hartig Is Contrary to the Great Weight of Authority

The District Court's opinion departed from the great weight of authority upholding assignments like Hartig's in antitrust actions, instead relying on dicta from a single unreported decision from the Northern District of California, *In re Ditropan XL Antitrust Litigation*, No. 3:06-md-01761-JSW, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007). In *Ditropan,* the court concluded that the assignment of an antitrust claim was prohibited by an anti-assignment clause, without any analysis of which state's law was applicable or whether an assignment in violation of an anti-assignment provision would be invalid under that law.[6] Even if *Ditropan* were applicable to contract interpretation under Pennsylvania law, the anti-assignment language in that case was also far broader (preventing "any assignment by operation of law and any change in control" of "any of [the Distributor or Supplier's] rights") than that at issue here (preventing assignment of "this

---

[6] Unlike in this case, the distribution agreements in *Ditropan* did not include a choice-of-law provision. (*See* A-64 to A-93) (Exhibit 2 to Decl. of Jill Lavitsky, *In re Ditropan XL Antitrust Litig.*, No. 06-md-1761 (N.D. Cal. Jan. 19, 2007), ECF No. 47-1 (Ex. A to Hartig Drug Company Inc.'s Opposition to Defendants' Motions to Dismiss, District Court Dkt. 23)).

Agreement"). (*See* A-82 to A-83) (Exhibit 2 to Decl. of Jill Lavitsky, *In re Ditropan XL Antitrust Litig.*, No. 06-md-1761 (N.D. Cal. Jan. 19, 2007), ECF No. 47-1 (Ex. A to Hartig Drug Company Inc.'s Opposition to Defendants' Motions to Dismiss, District Court Dkt. 23)).

Even judges in the same district have not followed the *Ditropan* decision. *See United Food*, 2015 WL 4397396, at *4; *TFT-LCD*, 2011 WL 3475408. For example, in *United Food*, like here, wholesalers that had directly purchased a drug (Lidoderm) from the defendants assigned their antitrust claims related to those purchases to the named plaintiffs. 2015 WL 4397396, at *3. As in this case, the distribution service agreement between the defendants and the wholesalers contained language prohibiting assignment of "'this Agreement' . . . without the other party's consent," required compliance with applicable laws, and did not mention antitrust law or assignment of legal claims. *Id.* at *4, 6.

The *United Food* court rejected the defendants' argument that the wholesalers' assignment to the named plaintiffs was invalid. Finding that "*Flat Panel, Lutheran Medical*, and *Meijer* are well-reasoned and factually analogous to this case," the court held that the "nonassignment clauses are limited to the assignment of duties and obligations under the [distribution service agreements] themselves and do not include causes of action sounding in antitrust arising from those agreements." *Id.* (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011

WL 3475408, at *3-4; *Lutheran Medical Center*, 25 F.3d at 619; *Meijer, Inc. v. Barr Pharm., Inc.*, 572 F. Supp. 2d 38, 64 (D.D.C. 2008)). The fact that the agreements required compliance with applicable laws did not bar assignment of claims for antitrust violations. *Id.* at *4.

In declining to follow *Ditropan*, the *United Food* court noted that reasoning on the anti-assignment clause in *Ditropan* was dicta (because the court had first concluded that the plaintiff lacked standing on other grounds – the assignment was obtained *after* the complaint was filed). The *United Food* court also pointed to the many cases other than *Ditropan* that had come to a different, "well-reasoned" conclusion. *United Food*, 2015 WL 4397396, at *4, 6.

So too in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, where defendants moved to dismiss the claims of the State of New York and the State of Florida, because the states' claims were brought in part as assignees of the antitrust claims of its vendors (original equipment manufacturers Dell, HP, IMB, and Lenovo), with whom defendants had supply contracts with anti-assignment clauses. 2011 WL 3475408; 2011 WL 4345316 (N.D. Cal. Sept. 15, 2011). The court examined the anti-assignment clauses in each of the supply contracts at issue, providing a useful framework to analyze the anti-assignment provision in this case. One had a general anti-assignment clause barring assignment of the contract as a whole. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3475408, at *4 n.6 ("[t]his

Agreement may not be assigned by either party in whole or in part . . . without the express written permission of the other party."). Others mentioned rights and duties. *Id.* at *4 ("[n]either party will assign their rights or delegate or subcontract their duties under this Agreement to third parties or Affiliates. . . ."). And the "broadest anti-assignment clause" the defendants produced stated: "[n]o right, interest, privilege, or obligation of this Agreement shall be assigned . . . ." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345316, at *3.

Having examined each of these clauses, the *Flat Panel* court concluded that they "only prohibit[] assignment of rights and duties created by the agreement itself. Litigation over antitrust claims cannot be seen as an 'interest in,' or 'right or duty' contemplated by, the contract." *Id.* The court then proceeded to permit the states of New York and Florida to proceed as assignees of the antitrust claims.

Similarly, in *Meijer*, the court flatly rejected the argument that distribution agreements barred assignment of antitrust claims because the agreements prohibited wholesalers from assigning "this agreement" without consent. *Meijer*, 572 F. Supp. 2d at 64. The court noted that the anti-assignment provision merely states that "'neither party may assign *this Agreement* without the prior written consent of the other party,'" and that "[w]hile such a provision may prevent an assignment of the parties' contractual duties, it cannot be read to prevent the

assignment of the parties' statutorily-based antitrust claims." *Id.* at 64 (emphasis in original).

The District Court's unsupported interpretation of the anti-assignment clause at issue also frustrates the strong national interest in promoting private enforcement of the antitrust laws. *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 472 (1982) (in enacting Section 4 of the Clayton Act, "Congress sought to create a private enforcement mechanism that would deter violators and deprive them of the fruits of their illegal actions, and would provide ample compensation to the victims of antitrust violations."). As Judge Hogan recognized in *In re Vitamins Antitrust Litigation*, "it has long been recognized that class actions play an important role in the private enforcement of antitrust actions." 209 F.R.D. 251, 258 (D.D.C. 2002). *See also Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 40–41 (S.D.N.Y. 1990) ("Since private enforcement of antitrust laws provides a supplement to governmental enforcement, it is our view that class action treatment of alleged antitrust violations is appropriate and desirable.").

No other class member has yet taken on the burden of filing a complaint to right the wrongs posed by Defendants' anticompetitive conduct. If allowed to stand, the District Court's holding will prevent recovery of damages by any member of the direct purchaser class. It will also undermine enforcement of the antitrust laws by unduly limiting who may bring a private claim.

## II. EVEN IF AMERISOURCE'S ASSIGNMENT VIOLATED ITS AGREEMENT WITH ALLERGAN, THAT VIOLATION DOES NOT INVALIDATE THE ASSIGNMENT OR ELIMINATE HARTIG'S STANDING

Even when anti-assignment clauses bar the *right* to assign a contract (or right to collect under the contract), they do not bar the *power* to make that assignment. Restatement (Second) of Contracts § 322(2)(b) ("A contract term prohibiting assignment of rights under the contract... gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective."); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 442 (3d Cir. 1999) (adopting reasoning of "numerous jurisdictions" that "contractual provisions limiting or prohibiting assignments operate only to limit a parties' right to assign the contract, but not their power to do so, unless the parties manifest an intent to the contrary with specificity" by stating that such an assignment shall be void) (citing *Garden State Buildings L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1321 (N.J. Super. 1997); *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.*, 693 F.2d 748, 754 (8th Cir. 1982), *inter alia*). The reasons for this are simple – as one District Court recognized: "Where the right assigned is tantamount to an interest in receiving either payment or a damage claim, the one obligated to pay cannot complain that he or she must pay Entity A as opposed to Entity B. His or her obligation is not altered in any way." *Lomas Mortg. U.S.A., Inc. v. W.E. O'Neil Constr. Co.*, 812 F. Supp. 841, 844 (N.D. Ill. 1993); *National Memorial*, 49 A.2d at

383–84 ("there seems to be no sound reason for the insurance company to forbid or limit an assignment by a beneficiary of the amount due him or her after the death of the insured").

In other words, even if Amerisource violated its agreement with Allergan by making a partial assignment of its claims under the antitrust laws, that violation does not render the assignment invalid. *See* Restatement (Second) of Contracts § 317(2)(a)-(c) (1981); *James ex. Rel. James v. Richman,* 465 F. Supp. 2d. 395, 404 n.3 (M.D. Pa. 2006) ("a nonassignability clause in a contract is treated as a personal covenant that does not invalidate an otherwise proper transfer, unless the clause expressly states that any assignment is 'void'") (quoting *Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp.,* 892 F. Supp. 1520 (N.D. Ga. 1995)).

Citing to the Restatement of Contracts, but overlooking this provision, the District Court erred in invalidating Amerisource's assignment to Hartig and dismissing Hartig's claim. Without explicit language declaring that an assignment in breach of an anti-assignment clause would be void, the accepted remedy for breach of an anti-assignment provision is a claim for breach of contract. *See SLM Soft.com, Inc. v. Cross Country Bank*, No. Civ. A. 00C09163JRJ, 2003 WL 1769770, at *9 (Del. Super. Apr. 2, 2003) ("Absent any other provision that expressly makes subsequent assignment void, the assignment is valid, but in breach

of the . . . Agreement"). The District Court's invalidation of the assignment defies decades of established contract law authority.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed and the case should be remanded for further proceedings.

Dated: November 16, 2015

Gregory A. Frank, Esquire
Marvin L. Frank
FRANK LLP
275 Madison Ave. Suite 705
New York, NY 10016
Tel: (212) 682-1853
Fax: (212) 682-1892
gfrank@frankllp.com
mfrank@frankllp.com

Melinda R. Coolidge
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mcoolidge@hausfeld.com

Respectfully Submitted,

By: */s/ J. Clayton Athey*
    J. Clayton Athey (DE Bar #4378)
    Eric J. Juray (DE Bar #5765)
    PRICKETT, JONES & ELLIOTT, P.A.
    1310 King Street
    Wilmington, DE 19899
    Tel: (302) 888-6500
    Fax: (302) 658-8111
    jcathey@prickett.com
    ejjuray@prickett.com

    Brent W. Landau
    HAUSFELD LLP
    325 Chestnut Street, Suite 900
    Philadelphia, PA 19106
    Tel: (215) 985-3270
    Fax: (215) 985-3271
    blandau@hausfeld.com

## **CERTIFICATE OF BAR MEMBERSHIP**

I hereby certify that I am a member in good standing of the United States Court of Appeals for the Third Circuit.


Dated: November 16, 2015                    */s/ J. Clayton Athey*
                                            J. Clayton Athey

## CERTIFICATE OF COMPLIANCE,
## DIGITAL SUBMISSION AND VIRUS CHECK

The foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because the brief contains fewer than 30 pages, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using MS Word, font size 14 point Times New Roman.

The hard copy and the electronic copy of the brief are identical.

The electronic copy of this brief has been virus scanned using Symantec Endpoint Protection NIS-22.5.2.15.

Dated:  November 16, 2015            */s/ J. Clayton Athey*_____
                                     J. Clayton Athey

## CERTIFICATE OF SERVICE

I, J. Clayton Athey, counsel for Plaintiff-Appellant, hereby certify that on this 16th day of November, 2015, I caused a copy Appellant's Opening Brief and the Appendix thereto to be filed electronically with the Clerk of the United States Court of Appeals for the Third Circuit using CM-ECF, which will send notification to all registered counsel of record in this matter. I further certify that I caused the required number of printed copies of Appellant's Opening Brief and the Appendix thereto to be filed with the Clerk of the United States Court of Appeals for the Third Circuit via Federal Express. Additionally, I certify that on this day that I caused copies of Appellant's Opening Brief and the Appendix thereto to be served by hand delivery upon the following counsel of record for Defendants-Appellees:

David E. Ross
Benjamin J. Schladweiler
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Jack B. Blumenfeld
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Stephen B. Brauerman
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Dated: November 16, 2015

*/s/ J. Clayton Athey*
J. Clayton Athey
*Attorneys for Plaintiff-Appellant*
*Hartig Drug Company Inc.*

No. 15-3289

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**HARTIG DRUG CO. INC.,**
*Plaintiff-Appellant,*

v.

**SENJU PHARMACEUTICAL CO., LTD., KYORIN
PHARMACEUTICAL CO. LTD., and ALLERGAN INC.,**
*Defendants-Appellees.*

On Appeal from the United States District Court
For the District of Delaware (No. 1:14-cv-00719)

**APPELLANT'S APPENDIX – VOLUME I (A-1 to A-13)**

J. Clayton Athey
Eric J. Juray
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE 19899
Tel: (302) 888-6500
jcathey@prickett.com
ejjuray@prickett.com

Melinda R. Coolidge
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
mcoolidge@hausfeld.com

Gregory A. Frank
Marvin L. Frank
FRANK LLP
275 Madison Ave. Suite 705
New York, NY 10016
Tel: (212) 682-1853
grank@frankllp.com
mfrank@frankllp.com

Brent W. Landau
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
blandau@hausfeld.com

*Attorneys for Plaintiff-Appellant
Hartig Drug Company Inc.*

## Appendix Volume I (Annexed to Brief)

Notice of Appeal ..............................................................................A-1 to A-2

Memorandum Opinion of The Honorable Sue L. Robinson
(August 19, 2015) ............................................................................A-3 to A-12

Order of The Honorable Sue L. Robinson Granting Motion to
Dismiss (August 19, 2015) .............................................................A-13

## Appendix Volume II (Bound Separately)

Docket Sheet - *Hartig Drug Company Inc. v. Senju
Pharmaceuticals Co., Ltd., et al.,* D. Del. No. 14-719 (SLR) ...........A-14 to A-21

Complaint - *Hartig Drug Company Inc. v. Senju
Pharmaceuticals Co., Ltd., et al.,* D. Del. No. 14-719 (SLR)
dated June 6, 2014...........................................................................A-22 to A-60

Declaration and Distributor Performance Agreement 2005 in
*In re Ditropan XL Antitrust Litigation,* No. 3:06-md-01761-JSW
(District Court Dkt. 23-1) ................................................................A-61 to A-93

## Appendix Volume III (Bound Separately Filed Under Seal)

Declaration and Distribution Services Agreement between
AmerisourceBergen Drug Corporation and Allergan Sales, LLC
dated October 1, 2005 (District Court Dkt. 16)................................A-94 to A-115

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HARTIG DRUG COMPANY INC.,      )
                                     )
          Plaintiff,         )
                                     )
          v.               )   C.A. No. 14-719 (SLR)
                                     )
SENJU PHARMACEUTICAL CO. LTD.,   )
KYORIN PHARMACEUTICAL CO. LTD.,  )   CLASS ACTION
AND ALLERGAN INC.,               )
                                     )
          Defendants.     )

### PLAINTIFF HARTIG DRUG COMPANY INC.'S NOTICE OF APPEAL

TO:     David E. Ross (#5228)              Jack B. Blumenfeld (#1014)
          Benjamin J. Schladweiler (#4601)     Morris, Nichols, Arsht & Tunnell LLP
          Ross Aronstam & Moritz LLP         1201 North Market Street
          100 S. West Street, Suite 400         P.O. Box 1347
          Wilmington, DE 19801             Wilmington, DE 19899
          Tel: (302) 576-1600                Tel: (302) 658-9200
          *Counsel for Defendant Kyorin*       *Counsel for Defendant Allergan Inc.*
          *Pharmaceutical Co., Ltd.*

          Richard D. Kirk (#922)
          Stephen B. Brauerman (#4952)
          Bayard, P.A.
          222 Delaware Avenue, Suite 900
          P.O. Box 25130
          Wilmington, DE 19899
          Tel: (302) 655-5000
          *Counsel for Defendant Senju*
          *Pharmaceutical Co., Ltd.*

     Notice is hereby given that Hartig Drug Company Inc. ("Hartig"), plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Third Circuit from the Memorandum Opinion (D.I. 32) and Order (D.I. 33) entered by this Court on August 19, 2015 (together, the "Opinion"), and from any and all adverse rulings incorporated in, antecedent

**A-1**

to, or ancillary to the Opinion.  Hartig is qualified to bring this appeal as representative of the class.

DATED:  September 18, 2015                    PRICKETT, JONES & ELLIOTT, P.A.

OF COUNSEL:                                   By:____/s/ J. Clayton Athey_____
                                                   J. Clayton Athey (DE Bar No. 4378)
Brent W. Landau                                    Eric J. Juray (DE Bar No. 5765)
HAUSFELD LLP                                       1310 King Street
325 Chestnut Street, Ste. 900                      Box 1328
Philadelphia, PA  19106                            Wilmington, DE  19899
Tel: (215) 985-3270                                Tel:  (302) 888-6500
Fax: (215) 985-3271                                Fax: (302) 658-8111
blandau@hausfeld.com                               jcathey@prickett.com
                                                   ejjuray@prickett.com
Melinda R. Coolidge
HAUSFELD LLP                                       *Attorneys for Plaintiff*
1700 K St. NW, Ste. 650
Washington, DC  20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mcoolidge@hausfeld.com

Gregory A. Frank
FRANK & BIANCO LLP
275 Madison Ave #705
New York, NY  10016
Tel: (212) 682-1853
Fax: (212) 682-1892
gfrank@frankandbianco.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARTIG DRUG COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-719-SLR |
| | ) | |
| SENJU PHARMACEUTICAL CO. LTD., | ) | |
| KYORIN PHARMACEUTICAL CO. LTD., | ) | |
| and ALLERGAN INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

J. Clayton Athey, Esquire and Eric J. Juray, Esquire of Prickett, Jones & Elliott, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Brent W. Landau, Esquire and Melinda R. Coolidge, Esquire of Hausfeld LLP and Gregory A. Frank, Esquire and Marvin L. Frank, Esquire of Frank & Bianco LLP.

Jack B. Blumenfeld, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant Allergan Inc. Of Counsel: Ashley E. Johnson, Esquire, Jason C. McKenney, Esquire and M. Sean Royall, Esquire of Gibson, Dunn & Crutcher LLP.

Stephen B. Brauerman, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Defendant Senju Pharmacuetical Co. Ltd. Of Counsel: William F. Sondericker, Esquire of Carter, Ledyard & Milburn LLP and Derrick Takeuchi, Esquire of Greenberg, Whitcombe & Takeuchi, LLP.

David Evan Ross, Esquire and Benjamin J. Schladweiler, Esquire of Seitz Ross Aronstam & Moritz LLP. Counsel for Defendant Kyorin Pharmaceutical. Of Counsel: Sara R. Kusiak, Esquire and Rosanna K. McCalips, Esquire of Jones Day.

---

**MEMORANDUM OPINION**

Dated: August 19, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On June 6, 2014, plaintiff Hartig Drug Company, Inc. ("Hartig" or "plaintiff") filed a complaint alleging certain antitrust violations concerning defendants Senju Pharmaceutical Co., Ltd. ("Senju"), Kyorin Pharmaceutical Co., Ltd. ("Kyorin"), and Allergan, Inc.'s ("Allergan") (collectively "defendants") aqueous liquid gatifloxacin ophthalmic products, Zymar® and Zymaxid®. (D.I. 1) Defendants are the owners or licensees of U.S. Patent Nos. 4,980,470 ("the '470 patent") and 5,880,283 ("the '283 patent"), which are listed in the United States Food and Drug Administration's ("FDA's") publication titled "Approved Drug Products with Therapeutic Equivalence Evaluations" (known as the "Orange Book") for Zymar® and Zymaxid®. (Id. at ¶¶ 36, 42, 45, 51, 72-73) Hartig brings this putative class action on behalf of all direct purchasers in the United States who purchased or paid for branded Zymar® or Zymaxid® products from June 15, 2010 until the allegedly anticompetitive effects of defendants' conduct cease (the "class period"). (Id. at ¶ 1) Hartig purchased Zymar® and Zymaxid® from AmerisourceBergen Drug Corporation ("Amerisource"). (Id. at ¶ 9) Amerisource directly purchased Zymar® and Zymaxid® from Allergan subject to a distribution services agreement ("DSA") during the class period. (Id.)

Hartig asserts that defendants engaged in unlawful anticompetitive acts and practices including:[1] (1) filing sham patent lawsuits; (2) committing fraud upon the

---

[1] Hartig alleges the same misconduct set forth in the complaint filed by Hartig's competitors Apotex, Inc. and Apotex Corp. (collectively, "Apotex") against defendants in a related lawsuit in this court. (Civ. No. 12-196, D.I. 1)

United States Patent & Trademark Office ("USPTO"); and (3) "product hopping" to

preclude pharmacies from substituting generic gatifloxacin ophthalmic formulations form

defendants' more expensive branded drugs.  (*Id.* at ¶ 3)  Specifically, Hartig alleges that

defendants:  (1) monopolized in violation of Section 2 of the Sherman Act; (2) conspired

to monopolize in violation of Section 2 of the Sherman Act; and (3) contracted,

combined, or conspired to restrain trade in violation of Section 1 of the Sherman Act.

(*Id.* at ¶¶ 153-192)  Presently before the court is Allergan's motion to dismiss under Fed.

R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter (D.I. 14), and Kyorin

and Senju's joint motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim (D.I. 17).[2]  The court has jurisdiction pursuant to U.S.C. §§ 1331 and 1337(a) and

15 U.S.C. § 15.

## II.  STANDARD OF REVIEW

Not only may the lack of subject matter jurisdiction be raised at any time, it

cannot be waived and the court is obliged to address the issue on its own motion.  *See*

*Moodie v. Fed. Reserve Bank of NY*, 58 F.3d 879, 882 (2d Cir. 1995).  Once jurisdiction

is challenged, the party asserting subject matter jurisdiction has the burden of proving

its existence.  *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62,

69 (3d Cir. 2000).  Under Rule 12(b)(1), the court's jurisdiction may be challenged either

facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency

of jurisdictional fact).  *See* 2 James W. Moore, *Moore's Federal Practice* § 12.30[4] (3d

ed. 1997).  Under a facial challenge to jurisdiction, the court must accept as true the

allegations contained in the complaint.  *See id.*  Dismissal for a facial challenge to

---

[2] Allergan joined in the motion to dismiss for failure to state a claim.  (D.I. 19)

jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the . . . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891).

## III. DISCUSSION

Section 4 of Clayton Act provides a private cause of action for "any person injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977), the United States Supreme Court "established the general rule that only direct purchasers from antitrust violators may recover damages in antitrust suits." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005). Indirect purchasers are generally not entitled to recover damages for passed-on overcharges. *Id.* This is referred to as the "indirect purchaser rule." Three policy reasons justified the Court's decision to impose this rule: "(1) a risk of duplicative liability for defendants and potentially inconsistent adjudications could arise if courts permitted both direct and

indirect purchasers to sue defendants for the same overcharge; (2) the evidentiary complexities and uncertainties involved in ascertaining the portion of the overcharge that the direct purchasers had passed on to the various levels of indirect purchasers would place too great a burden on the courts; and (3) permitting direct and indirect purchasers to sue only for the amount of the overcharge they themselves absorbed and did not pass on would cause inefficient enforcement of the antitrust laws by diluting the ultimate recovery and thus decreasing the direct purchasers' incentive to sue." *Id.* at 369-70.

Hartig does not allege that it purchased Zymar® and Zymaxid® directly from defendants during the class period. (D.I. 1 at ¶ 9) Rather, Hartig contends that it has standing to sue as a direct purchaser in that Amerisource "conveyed, assigned, and transferred to Hartig all of its rights, title and interest in and to all causes of action it may have against Defendants under the antitrust laws of the United States . . . arising out of or relating to Amerisource's purchase of Zymar and Zymaxid." (D.I. 1 at ¶ 9) Allergan does not dispute that "an antitrust claim can be expressly assigned." *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993). Instead, Allergan asserts that the DSA governing the relationship between it and Amerisource prevents such an assignment. In relevant part, the anti-assignment provision contained in the DSA states that "[t]his Agreement may not be assigned by either party without the prior written consent of the other party. Notwithstanding the foregoing, either party may assign its rights and obligations hereunder without the consent of the other party to a subsidiary or affiliate . . . ." (D.I. 16, ex. 1 at § 14(b)) Allergan alleges that it did not consent to the assignment of any rights held by

4

**A-7**

Amerisource under the DSA and, therefore, any purported assignment is invalid. (D.I. 16 at ¶ 4)

The DSA begins by stating that Amerisource and Allergan agree to an "arrangement where [Allergan] agrees to sell products . . . to [Amerisource] . . . so that [Amerisource] may distribute the Product to customers." (D.I. 16, ex. 1 at § 1(a)) The DSA contains, *inter alia*, guidelines governing price, payment and inventory levels, and a recitation of the parties' particular obligations under the agreement. Under the heading of "miscellaneous," the DSA states that "[t]his Agreement contains the entire agreement between the parties and supersedes any prior or contemporaneous agreement or understanding between the parties with regards to the subject matter hereof." (*Id.* at § 14(g)) The DSA also states that Allergan "will comply with federal, state and local laws governing the purchase, handling, sale or distribution of Products purchased under this Agreement." (*Id.* at § 4(i)) The DSA, however, does not specifically mention antitrust law or the assignment of legal claims.

Under Pennsylvania law, which governs the court's reading of the DSA (*id.* at § 14(c)), "an assignment will ordinarily be construed in accordance with the rules governing contract interpretation and the circumstances surrounding the execution of the assignment document," with the caveat that a court should not "modify the plain meaning of the contract under the guise of interpretation." *Crawford Cent. Sch. Dist. v. Com.*, 888 A.2d 616, 623 (Pa. 2005). Allergan argues that, under the plain meaning of the contract, the anti-assignment provision is broad in scope and extends to the assignment of the right to bring suit. Specifically, Allergen argues that because the second sentence of the assignment provision permits assignment of both "rights" and

5

**A-8**

"obligations" in certain circumstances, the DSA logically encompasses rights. Allergen

posits that, at least in the context of ERISA litigation, district courts in the Third Circuit

routinely interpret the prohibition against assigning "rights" as including causes of

action. *See Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dept'*, 1999 WL 600539,

at *3 (E.D. Pa. Aug. 10, 1999); *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, 2006 WL

1997424, at *10 n.8 (E.D. Pa. July 13, 2006); *Torpey v. Blue Cross Blue Shield of Tex.*,

2014 WL 346593, at *3 (D.N.J. Jan. 30, 2014).

Hartig argues that the DSA is focused on setting the terms for permitting

Amerisource to act as an authorized distributor and, therefore, the anti-assignment

clause only restricts Amerisource from assigning its right to serve as an authorized

distributor of Allergan's products. Hartig relies on a case from the Northern District of

California, which interpreted the Restatement of Contracts (Second) in the antitrust

context to mean that "the anti-assignment clauses are limited to each party's rights and

obligations under the contracts" and not to the assignment of antitrust claims. *In re

TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 3475408, at *3 (N.D. Cal, Aug. 9,

2011).[3] The relevant language from the Restatement of Contracts (Second) provides:

"Unless the circumstances indicate the contrary, a contract term prohibiting assignment

of 'the contract' bars only the delegation to an assignee of the performance by the

assignor of a duty or condition." Restatement of Contracts (Second) § 322 (1981).

Hartig adds that such an interpretation of the anti-assignment provision is consistent

with § 4 of the Clayton Act, 38 Stat. 731, which upholds a strong national interest in

---

[3] The broadest anti-assignment clause at issue in *TFT* stated that "[n]o right, interest, privilege, or obligation of this Agreement shall be assigned." *In re TFT-LCD*, 2011 WL 3475408 at *3.

6

**A-9**

promoting private enforcement of anti-trust laws. *See Blue Shield of Virginia v. McCready*, 457 U.S. 465, 472 (1982) (In enacting § 4, "Congress sought to create a private enforcement mechanism that would deter violators and deprive them of the fruits of their illegal actions, and would provide ample compensation to the victims of antitrust violations.").

The parties draw the court's attention to two opinions from the Northern District of California, each of which considered highly analogous facts to the case-at-bar, and each of which reached a different conclusion. *See United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund v. Teikoku Pharma USA*, 2015 WL 4397396 (N.D. Cal. July 17, 2015) (finding that the anti-assignment provision did not bar assignment of causes of action); and *In re Ditropan XL Antitrust Litigation* 2007 WL 2978329, at *2 (N.D. Cal. Oct. 11, 2007) (finding that the anti-assignment provision did bar assignment of causes of action). The court respectfully declines to follow the reasoning in *United Food*, and instead reaches the same conclusion as the court in *Ditropan XL*. In *United Food*, the agreement between the parties prohibited assignment of "this Agreement" or any of its "duties or responsibilities" without the other party's consent. 2015 WL 4397396 at *4. The court reasoned that "a duty is not equivalent to a right arising from a breach of that duty" and, therefore, the assignment of the right to sue for antitrust violations did not violate the anti-assignment provision. *Id.*

Unlike the anti-assignment clause in *United Food*, which did not expressly prohibit assignment of rights, this court is persuaded by Allergan's logic that the anti-assignment clause in the instant agreement refers to both rights and obligations.

7

**A-10**

Accordingly, assignment of a right would conflict with the plain meaning of the anti-assignment provision in the instant DSA. The court also finds that reading the DSA as prohibiting the right to bring a cause of action in the antitrust context is consistent with the DSA as a whole, as well as the circumstances surrounding the execution of the document. In particular, Hartig's antitrust claim is founded on pricing and purchases of Zymar® and Zymaxid® made pursuant to the DSA. Additionally, an antitrust claim fundamentally concerns the question of whether defendants complied with the provision in the DSA ensuring compliance "with federal . . . laws governing the purchase, handling, sale or distribution of Products." (D.I. 16, ex. 1 at § 4(i))[4]

Altogether, the court finds that the DSA forbids the assignment of the right to bring suit. As Hartig does not allege that Amerisource sought the permission of Allergan prior to executing the assignment, the court finds that such assignment is invalid. As such, the court grants Allergan's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Because the court lacks subject matter jurisdiction, it dismisses the action with respect to the remaining defendants.[5]

## IV. CONCLUSION

For the aforementioned reasons, Allergan's motion to dismiss for lack of jurisdiction over the subject matter (D.I. 14) is granted and defendants' joint motion to

---

[4] This conclusion is consistent with the Restatement of Contracts (Second) § 322, in that the "circumstances" – the factual context (a business relationship memorialized in a contract between a seller and a direct purchaser) and the clear legal principles governing such relationships (those enunciated in *Illinois Brick*) – "indicate the contrary," i.e., indicate that the right to bring an antitrust action cannot be assigned from a direct to an indirect purchaser.

[5] For the same reason, defendants' joint motion to dismiss under 12(b)(6) (D.I. 17) is denied as moot.

8

dismiss for failure to state a claim (D.I. 17) is denied as moot.  An appropriate order

shall issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HARTIG DRUG COMPANY INC.,            )
                                     )
         Plaintiff,                  )
                                     )
    v.                               )    Civ. No. 14-719-SLR
                                     )
SENJU PHARMACEUTICAL CO. LTD.,       )
KYORIN PHARMACEUTICAL CO. LTD.,      )
and ALLERGAN INC.,                   )
                                     )
         Defendants.                 )

## ORDER

At Wilmington this 19th day of August, 2015, consistent with the memorandum

opinion issued this same date;

IT IS ORDERED that:

1. Allergan Inc.'s motion to dismiss for lack of jurisdiction over the subject matter

(D.I. 14) is granted.

2. Defendants' joint motion to dismiss for failure to state a claim (D.I. 17) is

denied as moot.

_____
United States District Judge